IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MOLLY FOLKEMA,<br><br>        Plaintiff,<br>   v.<br><br>CITY OF TILLAMOOK, LYNN LOTHMAN, RAYMOND RAU, JAMY CHRISTENSEN, and NATHAN GEORGE,<br><br>        Defendants. | Case No.: 3:23-cv-00122-AN<br><br>OPINION AND ORDER |

        Plaintiff Molly Folkema ("Folkema") brought this action against defendants City of Tillamook (the "City"), Raymond Rau ("Rau"), Jamy Christensen ("Christensen") and Nathan George ("George"), (collectively, the "City defendants") and Lynn Lothman ("Lothman"), alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and Oregon Revised Statute ("ORS") § 659A.030, employment discrimination on the basis of whistleblower status in violation of ORS § 659A.199 and ORS § 659A.203, employment discrimination on the basis of initiating or aiding criminal or civil proceedings in violation of ORS § 659A.230, intentional infliction of emotional distress, battery, and negligent retention.

        On April 10, 2023, Lothman and the City defendants filed separate partial motions to dismiss and to strike portions of the complaint. Def. Lothman's Mot. to Dismiss ("Lothman's Mot."), ECF [12]; City Defs.' Mot. to Dismiss ("City Defs.' Mot."), ECF [13]. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated herein, the motions are DENIED.

## LEGAL STANDARD

### A.    Motion to Dismiss

        To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

1

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed R. Civ. P. 12(b)(6). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

In ruling on a (12)(b)(6) motion to dismiss, a court may consider only "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.*

**B.    Motion to Strike**

Federal Rule of Civil Procedure ("FRCP") 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" before any responsive pleading. Generally, motions to strike are "disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189-90 (D. Or. 2008). "'A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Biggs v. City of St. Paul*, No. 6:18-cv-506-MK, 2019 WL 1114868, at *1 (D. Or. Mar. 8, 2019) (quoting *Contreras, ex rel Contreras v. County of Glen*, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010)).

## BACKGROUND

**A.    Factual Background**

The following facts are taken from the complaint and assumed to be true for the purposes of the motions.

Plaintiff alleges that while employed as Office Manager of the City of Tillamook Police Department ("TPD"), she was sexually harassed by defendant Lothman, a TPD police officer. Compl., ECF [1], ¶¶ 16, 22-24, 27-32, 37.

In January 2019, Lothman was assigned to work in the TPD office and developed a friendship with plaintiff, who was often the only other person present in the office. *Id.* ¶¶ 17-19. On March 24, 2019, Lothman returned to his regular duty on the "graveyard shift," but continued to frequent the office before and after his shifts to spend time with plaintiff. *Id.* ¶ 21.

In the fall of 2019, while alone in the office with plaintiff, Lothman rubbed a tattoo on plaintiff's leg. *Id.* ¶ 22. He later apologized for this conduct. *Id.* Sometime after this incident, Lothman gave plaintiff a handwritten note stating, among other things, that Lothman's wife had seen text messages between him and plaintiff, that Lothman was "choosing his wife," and that Lothman "wanted to grab [p]laintiff and have his way with her." *Id.* ¶ 23.

In January 2020, Lothman switched from the graveyard shift to the day shift, which permitted him to see plaintiff more frequently in the office. *Id.* ¶ 24.

On May 1, 2020, Lothman sent plaintiff a text message stating that after talking with his wife, he could no longer text with plaintiff, and that all contact must be work-related and by TPD phone or email. *Id.* ¶ 31. That month, plaintiff began making complaints to then-TPD Chief of Police Terrance J. Wright ("Wright") about harassment and unwanted contact by Lothman. *Id.* ¶ 25. Wright investigated Lothman and told him to stop sending plaintiff text messages outside of work and warned him to "be careful with humor shared around or with [p]laintiff." *Id.* ¶ 26.

Despite this warning, Lothman continued to make "unwanted physical advances toward [p]laintiff[;]" Lothman would "hug [p]laintiff, kiss [p]laintiff's neck, rub [p]laintiff's leg or thigh, [and] rub [p]laintiff's shoulders," and on some occasions would attempt to touch her collarbones and chest. *Id.* ¶¶ 27-28. In July 2020, Lothman told plaintiff that he loved her. *Id.* ¶ 29. He then told other TPD employees that he was having an affair with plaintiff. *Id.* ¶ 29. From May through August 12, 2020, Lothman continued to send text messages to plaintiff's personal phone stating, amongst other things, that he was sorry

3

for his conduct, that he loved plaintiff, that he took advantage of plaintiff's kindness, and that plaintiff "blow[s] most women out of the water! (Winking face, tongue out emoji)." *Id.* ¶ 32.

Plaintiff continued to complain to Wright about Lothman. *Id.* ¶ 33. On August 12, 2020, Lothman told plaintiff that she was at risk of termination because she was being investigated for having an inappropriate relationship with a TPD officer. When plaintiff asked Wright about Lothman's statements, he informed her that no such investigation was being conducted. *Id.* ¶ 34. Lothman was issued a written reprimand later that month for violations including sexual harassment, dishonesty, and intimidating and harassing plaintiff. *Id.* ¶ 35. He was warned that further violations could result in discipline, up to and including termination. *Id.*

Shortly after being reprimanded, Lothman was investigated for searching through plaintiff's desk without her consent. *Id.* ¶ 36. Lothman claimed that he discovered love notes to plaintiff from another coworker in her desk, and plaintiff believes he told other coworkers about these notes. *Id.*

On another occasion, for which no date is provided in the complaint, Lothman reached into plaintiff's blouse and touched her breast. *Id.* ¶ 37. On October 24, 2020, plaintiff reported this incident to TPD Lieutenant Erica Bomar ("Bomar"), who interviewed plaintiff about her allegations against Lothman and escalated them to Wright. *Id.* ¶¶ 38, 40. The incident was also reported to the Oregon State Police and the Tillamook County District Attorney, although no criminal charges were ultimately filed. *Id.* ¶¶ 41, 44-45. Lothman was placed on administrative leave pending an investigation. *Id.* ¶ 42.

In February 2021, defendant George, the Tillamook City Manager, hired a private investigator to conduct an investigation into plaintiff's allegations against Lothman. *Id.* ¶ 47. Plaintiff was interviewed by the private investigator in the presence of defendant Christensen, the Human Resources Director for the City. *Id.* ¶ 48.

That same month, plaintiff had a conversation with two TPD officers in which she allegedly referred to TPD dispatchers as "a bunch of bitches." *Id.* ¶¶ 49, 53. This conversation was overheard by dispatcher Lacey Larson ("Larson"), who confronted plaintiff. *Id.* ¶¶ 49-50. The City placed both plaintiff and Larson on administrative leave. *Id.* ¶¶ 51-52. Plaintiff alleges that Larson's leave notice included an

4

indication that she would return to work, while plaintiff's notice did not provide a reason for the leave or a return date. *Id*. Both plaintiff and Larson sent emails to George relating their versions of the conversation and subsequent confrontation. *Id.* ¶¶ 53-54.

On March 26, 2021, the private investigator report regarding Lothman's conduct was completed and submitted to George. *Id.* ¶ 56.

On April 12, 2021, Larson was returned to work. *Id.* ¶ 59.

On April 14, 2021, plaintiff received a notice of potential termination from George. *Id.* ¶ 60. The notice included several possible grounds for termination, including the "bunch of bitches" comment, misstating hours worked on a specific day, "unprofessional interactions" between plaintiff and a Detective Barnett, and disregarding an order not to contact City employees during her leave when plaintiff spoke to Wright and stated that she intended to bring chocolate to the TPD office. *Id.*

Plaintiff submitted a tort claim notice to the City and George on April 19, 2021, alleging sexual harassment, discrimination, and retaliation. *Id.* ¶ 61.

On May 3, 2021, plaintiff was terminated by the City. *Id.* ¶ 63.

On June 4, 2021, Christensen sent an email stating that plaintiff's situation was "taking forever" and "we need Lynn [Lothman] back," and that after speaking with George, "we want to get this going now." *Id.* ¶ 65 (alterations in original). About two weeks later, Lothman had a meeting with George at which he was informed that the only disciplinary action taken as a result of his conduct would be a second written reprimand. *Id.* ¶ 66. During the meeting, Lothman complained that Bomar was not impartial in investigating plaintiff's claims against him. *Id.* On June 21, 2021, Bomar was placed on administrative leave. *Id.* ¶ 67. Lothman was returned to duty under new TPD Chief of Police, defendant Rau, on June 22, 2021. *Id.* ¶¶ 68-69.

B.   **Procedural Background**

Plaintiff submitted a complaint with the Oregon Bureau of Labor and Industries ("BOLI") and cross-filed it with the United States Equal Employment Opportunity Commission ("EEOC") on December 30, 2021. *Id.* ¶ 12. BOLI issued a substantial evidence determination that the City committed

unlawful employment practices. *Id.* ¶ 13; *Id.*, Ex. A, at 59-69.

Plaintiff filed the complaint before this Court on January 25, 2023.

On April 10, 2023, Lothman filed a motion to dismiss the eighth count of plaintiff's second claim, violation of ORS § 659A.030(1)(g), and to strike factual allegations under the Oregon Torts Claims Act ("OTCA"), ORS §§ 30.260 to 30.300. Lothman's Mot. 2. That same day, City defendants filed a motion to dismiss plaintiff's ORS § 659A.030(1)(f), ORS § 659A.030(1)(g), and intentional infliction of emotional distress claims against the individual City defendants and to strike factual allegations they allege are time-barred by the OTCA, as well as any references to the BOLI process. City Defs.' Mot. 2.

## DISCUSSION

**A.    Motions to Dismiss**

*1.    Proper Party Defendant*

Lothman moves to dismiss plaintiff's ORS § 659A.030(1)(g) claim against him, arguing that he is not a proper defendant under the OTCA, because only a public body may be liable for a tort claim brought against a public official for acts taken during the course of their employment. Lothman Mot. 4-5. City defendants move to dismiss plaintiff's ORS § 659A.030(1)(f) claims against George and Christensen, the ORS § 659A.030(1)(g) claims against George, Christensen, and Rau, and the intentional infliction of emotional distress claim against George, Christensen, and Rau on the same basis. City Defs. Mot. 5.

The OTCA defines the scope of liability of state actors for tort claims. Under the OTCA, the public body is the proper defendant when a civil action is brought against public officers or employees acting within the scope of their employment. Or. Rev. Stat. § 30.265(1); *accord Carlton v. Marion Cnty.*, No. CV03-6202-AA, 2004 WL 1442598, at *5 (D. Or. Feb. 19, 2004). A plaintiff may bring a tort claim against a public employee in their individual capacity, however, for acts taken outside the scope of employment. *Durham v. City of Portland*, 181 Or. App. 409, 418, 45 P.3d 998 (2002). An officer or employee is acting within the scope of their employment if "(1) the act occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind for which the employee was hired to perform."

6

*Carlton*, 2004 WL 1442598 at *5 (citing *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)).

The scope of liability under the OTCA is also determined by the amount of damages alleged. Under the OTCA, "an officer, employee, or agent of a public body may be held personally liable only when the requested prayer for relief exceeds the damages cap allowed under ORS 30.271, 30.272, or 30.273." *Kramer v. S. Oregon Univ.*, No. 1:13-cv-00340-CL, 2013 WL 4782154, at *6 (D. Or. Sept. 5, 2013); ORS § 30.265(3)-(4). The damages cap for a single claimant against a local public body for personal injury causes of action arising on or after July 1, 2020 and before July 1, 2021 is $769,200.00. Or. Rev. Stat. § 30.272(2)(g), (4); Tort Claims Table of Liability Limits, OR. JUD. DEP'T., https://www.courts.oregon.gov/Documents/Table-of-Liability-Limits.pdf (last visited Oct. 27, 2023).

Plaintiff alleges that Lothman was, at times, acting outside of the scope of his employment. Compl. ¶ 7 ("At times, Lothman was acting inside the scope of his duties as TPD Police Officer. At other times, Lothman was acting outside the scope of his official duties."). Although this allegation is conclusory, it is reasonable to infer that Lothman's alleged conduct, which consisted of nonconsensual touching, including attempts to touch plaintiff's breasts, declarations of love, falsely informing other TPD employees that he was having an affair with plaintiff, and writing plaintiff notes with statements that Lothman "wanted to grab [p]laintiff and have his way with her," was not motivated by a desire to serve the TPD and was not the kind of conduct that he was hired to perform as a police officer. *See Vinsonhaler v. Quantum Residential Corp.*, 189 Or. App. 1, 5-6, 73 P.3d 930 (2003) (holding that jury could find that defendant employee who committed sexual harassment during the time and space limits of their employment acted outside of the scope of their employment when no evidence suggested that defendants' conduct was intended to serve their employer). Lothman argues, without support, that plaintiff must allege that Lothman was acting outside of the scope of his employment beneath the heading of the relevant claim and cannot, as plaintiff has done, incorporate by references allegations stated earlier in her complaint. Def. Lothman's Reply in Support of Mot. to Dismiss ("Lothman's Reply"), ECF [19], at 2-3. The Court is not familiar with any rule imposing such a requirement. Because plaintiff's pleadings sufficiently allege that Lothman was acting outside the scope of his employment, he is a proper defendant under the OTCA.

7

Plaintiff acknowledges that she did not explicitly plead that Rau, Christensen, or George acted outside the scope of their employment. Pl.'s Resp. to City Def's Mot. to Dismiss ("Pl. Respl. To City Defs."), ECF [16], at 13. She argues, however, that the absence of such an allegation in her complaint does not make it reasonable to infer that Rau, Christensen, and George were acting within the scope of their employment at all times when engaged in the conduct alleged in the complaint. *Id.* (citing *Stanfield v. Laccoarce*, 284 Or. 651, 655, 588 P.2d 1271 (1978) ("the question of whether or not an employee has acted within the scope of his employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts.")). City defendants contend that, to the contrary, plaintiff cannot maintain a tort claim against the individual defendants without alleging that they acted outside the scope of their employment. City Defs.' Mot. 5 (citing *Vineyard v. Soto*, CIV. 10-1481-AC, 2011 WL 3705001, at *5 (D Or July 21, 2011) (recommending dismissal of tort claims against PSU officers where plaintiff did not allege that the officers ever acted outside the scope of their employment), *report and recommendation adopted*, CIV. 3:10-1481-AC, 2011 WL 3704177 (D Or Aug 22, 2011)).

On the face of the complaint, it is not apparent that Rau, Christensen, or George acted outside the scope of their employment. George oversaw the investigation into plaintiff's allegations, placed her on administrative leave, sent her disciplinary and termination notices, and met with and reinstated Lothman with a verbal warning. Christensen was in attendance when plaintiff testified for the investigation and sent the email requesting Lothman's return to work. Rau permitted Lothman to return to work and "participate[d] in and support[ed]" George and the City's actions. Compl. ¶ 181. All of these acts occurred within the time and space limits authorized by employment and are plausibly the kinds of acts that George, Christensen, and Rau were hired to perform. The complaint does not allege that George, Christensen, and Rau were motivated by a personal allegiance to Lothman or animus toward Folkema, and it is plausible that they were motivated, at least in part, by a desire to serve their employer through termination and disciplinary decisions believed to be beneficial to the TPD.

Regardless of whether Rau, Christensen, and George were acting in the scope of their employment, however, they are proper defendants under the OTCA because plaintiff alleges $1,750,000.00

8

in damages, which is greater than the damages cap for her claim. "When a plaintiff asserts a claim against both a public body and employee of that public body, and the record supports a damage claim exceeding the OTCA cap for the public body, the plaintiff should be allowed to proceed against the individual defendant." *Leonetti v. Bray*, No. 3:16-cv-00014-AC, 2018 WL 11226238, at *21 (D. Or. Feb. 16, 2018) (collecting cases), *report and recommendation adopted*, No. 3:16-cv-00014-AC, 2018 WL 11226237 (D. Or. Apr. 25, 2018), *aff'd*, 774 F. App'x 417 (9th Cir. 2019).

Lothman, Rau, Christensen, and George are, therefore, proper defendants under the OTCA.

2. *Aiding and Abetting Claims*

City defendants argue that individual defendants are not liable for aiding and abetting discriminatory conduct against plaintiff because, as agents of the City, they were essentially acting as the City, and the City cannot aid and abet itself. City Defs.' Mot. at 6; City Defendants' Reply in Support of Mot. to Dismiss ("City Defs.' Reply"), ECF [18], at 4.

This contradicts the plain language of ORS § 659A.030(1)(g), which states that it is an unlawful employment practice for "any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter." *See White v. Amedisys Holding, LLC*, No. 3:12-cv-01773-ST, 2012 WL 7037317, at *3-6 (D. Or. Dec. 18, 2012) ("[b]ased on the clear language of [ORS § 659A.030], an 'aiding and abetting' claim under that statute may be brought against an individual employee."), *report and recommendation adopted*, No. 3:12-Ccv-01773-ST, 2013 WL 489674 (D. Or. Feb. 7, 2013).

Some decisions from this District have found that a person cannot aid or abet themselves if they are the primary actor in the alleged discrimination, while others have found that allegations against a primary actor are sufficient to state an aiding and abetting claim. *Compare Hannan v. Bus. J. Publications, Inc.*, No. 3:14-cv-00831-SB, 2015 WL 9265959, at *17-19 (D. Or. Oct. 2, 2015) (holding that supervisor who was primary actor in plaintiff's termination could not be liable for aiding and abetting age discrimination), *report and recommendation adopted*, No. 3:14-cv-00831-SB, 2015 WL 7720496 (D. Or. Nov. 30, 2015) *with White*, 2012 WL 7037317, at *5 (noting that "if the employee is simply acting on behalf

9

of a separate and distinct employing entity, then he or she could well aid, abet, compel or coerce that employer's unlawful employment practices" but "[t]he situation is different if the employee is legally equivalent to the employer, as in a sole proprietorship . . . . [i]n that event, the employee would be aiding and abetting himself or herself."); *see Jansen v. Deschutes Cnty.*, No. 6:17-cv-01276-MK, 2019 WL 7476690, at *21-22 (D. Or. Sept. 30, 2019) (collecting cases), *report and recommendation adopted*, No. 6:17-CV-1276-MK, 2020 WL 42463 (D. Or. Jan. 3, 2020).

City defendants do not argue that George, Christensen, or Rau was a primary actor and, in any event, the issue of whether aiding and abetting liability exists for primary actors is unresolved. The Court declines, therefore, to find that plaintiff has failed to state an aiding and abetting claim against George, Christensen, and Rau. *See Ekeya v. Shriners Hosp. for Child., Portland*, 258 F. Supp. 3d 1192, 1204 (D. Or. 2017) (finding that because "the issue of whether aiding and abetting liability exists when the operative action is taken by the employer corporation's primary actor or executive authority" is unresolved, "it would be inappropriate for this court to conclude that it is obvious that [plaintiff's] aiding and abetting allegations against [the defendant] fail to state a claim.") (quotation marks omitted).

Lothman argues that, as the alleged primary actor in the alleged discrimination, he cannot aid and abet himself. Lothman's Mot. 4-5; Lothman's Reply 3-4. As discussed above, the issue of whether aiding and abetting liability exists for primary actors is unresolved. In addition, Lothman misunderstands the term "primary actor," which is generally used by courts in this District to describe a sole employer or a supervisor who terminated the plaintiff or otherwise undertook the adverse employment action. *See, e.g., Botello v. City of Salem*, No. 6:20-cv-00358-MC, 2020 WL 4431781, at *3 (D Or July 31, 2020) (dismissing aiding and abetting claim where plaintiff alleged that supervisor, acting alone, aided and abetted his own discriminatory conduct); *Hannan*, 2015 WL 9265959 at *18 (finding that supervisor who terminated plaintiff was primary actor and could not be liable for aiding and abetting age discrimination); *White*, 2012 WL 7037317, at *5-6 (explaining that an employee who is "legally equivalent to the employer" cannot aid or abet themself). Lothman was not plaintiff's supervisor, did not place plaintiff on administrative leave or

terminate her, and was not legally equivalent to the TPD.  He is not, therefore, a primary actor, and can be held liable for aiding and abetting employment discrimination.

Because Lothman, George, Christensen, and Rau may be held liable for aiding and abetting, plaintiff has properly stated a claim against them, and the motions to dismiss are denied.

**B.     Motions to Strike**

*1.     Timeliness Under the OTCA*

Lothman and City defendants argue that certain allegations in the complaint are untimely under the OTCA and should be struck from the complaint.  Lothman's Mot. 5-6; City Defs.' Mot. 4.

Under the OTCA, a prospective plaintiff must give notice of their claims within 180 days of the alleged loss or injury.  Or. Rev. Stat. § 30.275(2).  Notice is satisfied by formal, written notice to an attorney designated by the public body as its general counsel, actual notice by any person responsible for administering tort claims on behalf of the public body, commencement of an action by the claimant, or payment of all or part of the claim by the public body.  *Id.* § 30.275(3)-(6).  Plaintiff bears the burden of proving that notice was given.  *Id.* § 30.275(7).

Lothman and City defendants assume that the operative notice for purposes of the OTCA was plaintiff's letter to the City expressing her intent to commence legal action, which the City received on April 22, 2021.  Lothman's Mot. 6; City Defs.' Mot. 4; Compl. ¶ 11.  Lothman additionally argues that any other letters or BOLI complaints are not sufficient tort claim notice.  Lothman's Mot. 6.  Plaintiff does not dispute that she gave notice in the April 22, 2021 letter, does not assert that her BOLI complaint or EEOC complaint were intended to be used as notice, and adds that she sent a second notice to George and the City on November 9, 2021. Pl.'s Resp. to Def. Lothman's Mot. to Dismiss ("Pl.'s Resp. to Lothman), ECF [14], at 17.

Defendants argue that, because formal notice was given on April 22, 2021, any conduct that occurred prior to October 24, 2020, 180 days before the notice date, cannot be used as the basis for any of plaintiff's claims.  Lothman's Mot. 7; City Defs.' Mot. 4.  Lothman asserts that such allegedly untimely allegations are immaterial, and thus should be struck under FRCP 12(f) because "they cannot be used to

support a claim." Lothman's Mot. 6 (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) (describing immaterial matter as "that which has no essential or important relationship to the claim for relief or the defenses being plead.")). The struck allegations would include approximately paragraphs 15 through 36 of plaintiff's complaint, which describe Lothman's conduct and resulting reprimands prior to the incident in which Lothman touched plaintiff's breast. There is no date provided, however, for that incident, leaving open the possibility that it, too, occurred prior to October 24, 2020.

The 180-day notice period required by ORS § 30.275 begins to run on the date of the "alleged loss or injury." Plaintiff notes that her alleged losses or injuries did not occur until April 14, 2021, when she was given the notice of potential termination; May 3, 2021, when she was terminated; and June 22, 2021, when Lothman was returned to work. Pl.'s Resp. to Lothman 14-15. These dates occurred within 180 days of the dates on which plaintiff states she gave notice of her tort claim. Plaintiff could not have been aware of the adverse employment actions underlying this case until, at minimum, April 14, 2021, when she was given notice of potential termination. Plaintiff's notice thus complies with the time requirements of ORS § 30.275. *See Plumeau v. Sch. Dist. No. 40 Yamhill*, 130 F.3d 432 (9th Cir. 1997) ("[T]he notice period begins to run 'when the plaintiff knows, or in the exercise of reasonable care should have known, facts which would make a reasonable person aware of a substantial possibility that [a tort action] exists.'") (quoting *Gaston v. Parsons*, 318 Or. 247, 256, 864 P.2d 1319 (1994)) (alterations in original).

In addition, Oregon House Bill ("H.B.") 4212, which was signed into law on June 30, 2020 and expired on December 31, 2021, tolled plaintiff's deadline for providing notice. Pl.'s Resp. to Lothman 13; Pl.'s Resp. to City Defs. 5-7. H.B. 4212 reads, in part:

> If the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of the declaration, is in effect, or within 90 days after the declaration and any extension is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect.

H.B. 4212 § 7(1), 80th Leg., 1st Spec. Sess. (Or. 2020). Pursuant to H.B. 4212, any claim that did not

expire prior to June 30, 2020 was tolled until at least December 31, 2021.  Therefore, plaintiff's notice letter received on April 22, 2021 preserved any claim arising as far back as January 2, 2020.  *See Crooker v. City of Portland*, No. 3:20-cv-01961-IM, 2021 WL 3823203, at *5 (D. Or. Aug. 26, 2021), (permitting otherwise time-barred tort claim to proceed because it had not expired before H.B. 4212 went into effect and notice was given during emergency period in which H.B. 4212 was in effect); *Colton v. Walmart, Inc.*, No. 3:20-cv-01895-JR, 2021 WL 2008809, at *4 (D. Or. Apr. 7, 2021) (finding plaintiff's otherwise untimely unlawful employment practices claims timely because H.B. 4212 tolled the statute of limitations for giving notice of a claim), *report and recommendation adopted*, No. 3:20-CV-01895-JR, 2021 WL 2004776 (D. Or. May 19, 2021).  As a result of the tolling, allegations of events that occurred as early as January 2, 2020 are timely under the OTCA.

        Defendants additionally contend that, regardless of the dates of the adverse employment actions, plaintiff's allegations that fall outside the notice window constitute "discrete acts of alleged discriminatory conduct" which were not preserved by her notice unless she is alleging a continuing violation theory.  Lothman's Reply 8.  City defendants further argue that none of plaintiff's claims "would allow her to claim a continuing violation theory."  City Defs.' Reply 2.  These arguments were raised for the first time in defendants' reply briefs, which the Court need not consider, as they are waived.  *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").  Nevertheless, because defendants' arguments are unpersuasive, the Court addresses them briefly.

        The continuing violations doctrine extends the accrual of a tort claim "where there is no single incident that can fairly or realistically be identified as the cause of significant harm."  *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (quotation marks and citation omitted).  Although plaintiff maintains that her complaint does not foreclose a continuing violation theory, the issue is not material to the instant motions.  Plaintiff has pled, at minimum, the occurrence of discrete adverse employment actions that occurred within the statutory notice period.  Although the complaint discusses events that occurred prior to January 2, 2020, those allegations include information about plaintiff and Lothman's personal and work relationship and the incident when Lothman rubbed plaintiff's leg in the office.  Compl. ¶¶ 15-23.

These allegations provide background information relating to plaintiff's claims of employment discrimination and retaliation as a result of making complaints against Lothman. A notice period such as that imposed by the OTCA does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Finally, defendants argue that even if plaintiff's allegations are not barred by the notice requirement of the OTCA, they are too remote and irrelevant. Lothman's Reply 8, City Defs.' Reply 3. As discussed above, the Court finds that plaintiff's allegations of events that occurred before January 2, 2020 provide background information related to her claims. They are, in other words, relevant. Nor are the allegations too remote from plaintiff's claims; and at any rate, remoteness is not a basis for striking a pleading under FRCP 12(f).

Because plaintiff's pre-October 24, 2020 allegations are timely and there is no basis for striking them under FRCP 12(f), the motion to strike these allegations is denied.

    2.    *References to the BOLI Process*

City defendants argue that because BOLI failed to exclude alleged conduct that occurred prior to October 24, 2020 in its determination, any reference to the BOLI process should be struck. City Defs.' Mot. 4.

As discussed *supra*, the Court declines to strike allegations of events that occurred prior to October 24, 2020. City defendants provide no other basis for striking references to the BOLI process. They cite a single case in support of the request to strike such references, *Coleman v. Oregon Parks & Recreation Dep't ex rel. State*, 234 Or App 132, 227 P3d 815 (2010) (affirming dismissal of loss of consortium claim because of failure to provide notice), which does not mention the BOLI process or a motion to strike.

Lothman argues for the first time in his reply that references to the BOLI process and findings should be struck because they "are inappropriate to include in a Complaint and have been ruled to be inadmissible hearsay." Lothman's Reply 4. Because this argument was raised for the first time in the reply brief, it is waived. There is also no basis for such an argument, as it is well-established law that a court may consider allegations contained in the complaint and exhibits attached to the complaint when

deciding a motion to dismiss and must take as true facts alleged in the complaint.[1]

Consequently, the Court declines to strike references to the BOLI process from the complaint.

## CONCLUSION

For the foregoing reasons, defendant Lothman's Motion to Dismiss, ECF [12], and incorporated Motion to Strike are DENIED, and City defendant's Motion to Dismiss, ECF [13], and incorporated Motion to Strike are DENIED.

IT IS SO ORDERED.

DATED this 2nd day of November, 2023.

Adrienne Nelson
United States District Judge

---

[1] Lothman also objects to plaintiff's inclusion of the Oregon State Police Report created as a result of her complaint about Lothman's conduct. Lothman's Reply 5-6; Decl. of Andrew Mittendorf ("Mittendorf Decl."), Ex. 1, ECF [15]. Because the Court does not rely on or reference the report in this opinion and order, it will not address the objection.